[62 NYS3d 536]

In the Matter of KEIRSTEN KLATCH, an Attorney, Respondent.

Second Department, November 1, 2017

### APPEARANCES OF COUNSEL

*Catherine A. Sheridan*, Hauppauge (*Ian P. Barry* of counsel), for the Grievance Committee for the Tenth Judicial District.

*Frankfurt Kurnit Klein & Selz, P.C.*, New York City (*Ronald C. Minkoff* and *Tyler Maulsby* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

By order dated May 17, 2016 (2016 WL 2874105), the Supreme Court of Florida granted the Florida bar's petition, held the respondent in contempt, and suspended the respondent from the practice of law in that state, effective 30 days from the date of the order, and continuing until she fully responded in writing to a subpoena and official inquiry issued by the Florida bar (hereinafter the bar).

On May 19, 2016, the bar filed a complaint against the respondent. On July 11, 2016, the bar moved for default, an order deeming matters admitted, and summary judgment. On July 15, 2016, the Supreme Court of Florida granted the bar's motions and found the respondent guilty as charged in the complaint. A sanctions hearing was held on October 28, 2016, December 2, 2016, and January 6, 2017.

On January 4, 2017, the respondent entered into a conditional plea for consent judgment, wherein she consented to a three-year suspension, effective June 16, 2016, and admitted the following facts:

> 1. While working at a law firm as a paralegal, the respondent became acquainted with Jose Carrasquillo, who had a wrongful death case.

2. In 2010, Carrasquillo asked the respondent to take over his case since she was already familiar with it and had met with him regularly in prison in both New York and Florida.

3. At that time, the respondent was admitted to practice in New York, and had passed the Florida bar exam, but had not yet been admitted to practice in Florida.

4. The respondent filed an appearance in Carrasquillo's wrongful death case pro hac vice.

5. Thereafter, the wrongful death case settled.

6. Carrasquillo asked the respondent to hold his funds in trust, and she agreed.

7. Over the years, Carrasquillo instructed the respondent to make disbursements to himself and to others.

8. The respondent complied with his requests.

9. As time progressed, the respondent's communications with Carrasquillo broke down for several reasons, including various prison transfers.

10. In 2013, Carrasquillo filed a complaint with the bar that he later withdrew.

11. In 2014, Carrasquillo filed another complaint with the bar.

12. The respondent and Carrasquillo agreed that she would remit funds to him in $5,000 increments as allowed by the Florida Department of Corrections. The respondent offered to remit funds to the bar, but the bar declined.

13. Carrasquillo advised the bar that he was satisfied, and the file was closed.

14. In late 2015, Carrasquillo again complained that he had lost contact with the respondent.

15. The bar asked the respondent to respond to the allegations.

16. At first, the respondent advised the bar that Carrasquillo's money was in her New York trust ac-

count, and that she would be moving it to a Florida trust account.

17. Later, the respondent advised the bar that she would not be moving the money to Florida and that it would remain in New York.

18. The bar asked the respondent for the account information for both accounts.

19. The respondent provided the Florida trust account information, but failed to provide any information about the New York trust account.

20. The respondent testified at the final hearing that she failed to provide the New York trust account information because she was uncertain whether she could disclose information pertaining to her New York clients.

21. The respondent provided a handwritten ledger for Carrasquillo's account, which purported to record activity from 2011 until August 2014.

22. The ledger ends with the following notation, dated August 2014: "total funds left: $21,540.85."

23. Carrasquillo had told the respondent several times that if she needed to borrow money from him she could.

24. However, Carrasquillo also told the respondent that she had to ask his permission first.

25. The respondent did indeed borrow the remainder of Carrasqillo's money in 2012 and 2013, but misunderstood that she needed to ask first.

26. Carrasquillo admitted that there may have been a misunderstanding, and stated that he bore the respondent no ill will and did not wish to see her disbarred over this matter.

27. The respondent replaced all of the borrowed funds and Carrasquillo was satisfied.

With respect to the misconduct charged, the respondent admitted, by virtue of her default, that she violated the following rules of the Rules Regulating the Florida Bar: 4-1.2 (a) (a lawyer shall abide by a client's decisions); 4-1.4 (a) (failure to inform the client of status of the representation); 4-8.4

(a) (violate/attempt to violate the Rules of Professional Conduct); 4-8.4 (c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 4-8.4 (g) (failure to respond to disciplinary agency); 5-1.1 (a) (nature of money or property entrusted to the attorney); 5-1.1 (b) (application of trust funds or property to specific purpose); and 5-1.2 (b) (minimum trust accounting record).

The referee, R. Lee Smith II, issued a report dated February 1, 2017, accepting consent judgment, adopted the above facts, and recommended that the respondent be found guilty of the violations as outlined above. As to sanction, the referee recommended a three-year suspension, effective June 16, 2016, followed by a three-year probationary period upon reinstatement, and payment of the bar's costs.

By order dated March 9, 2017 (2017 WL 942753), the Supreme Court of Florida approved the uncontested report of the referee, suspended the respondent for a period of three years, effective June 16, 2016, and placed the respondent on probation for three years under the terms and conditions set forth in the referee's report and consent judgment. The order also imposed costs in the amount of $4,915.42.

The New York Proceeding

By order to show cause dated January 20, 2017, the respondent was directed to show cause why an order should or should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon her for the misconduct underlying the discipline imposed by order of the Supreme Court of Florida dated May 17, 2016, by filing an affidavit in accordance with 22 NYCRR 1240.13 (b) with the Clerk of the Court, with proof of service upon the Grievance Committee for the Tenth Judicial District, on or before February 21, 2017. By a second order to show cause, dated May 9, 2017, the respondent was directed to show cause why an order should or should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon her for the misconduct underlying the discipline imposed by order of the Supreme Court of Florida dated March 9, 2017, by filing an affidavit in accordance with 22 NYCRR 1240.13 (b) with the Clerk of the Court, with proof of service upon the Grievance Committee, on or before June 8, 2017. In light of the Supreme Court of Florida's final order of discipline dated March 9, 2017, the respondent moved to vacate this Court's order to show cause dated January 20, 2017, or to deem it academic.

In an affidavit dated June 30, 2017, the respondent states that she does not object to the imposition of reciprocal discipline. The respondent states that in 2012 she experienced a series of stressful events in her personal life, causing her to develop various mental health problems. Although she sought treatment, her initial attempt to recover was unsuccessful. It was not until she relocated back to New York, found appropriate treatment, and returned to a supportive environment of family and friends, that she began to recover. The respondent accepts full responsibility for her actions that led to the imposition of discipline in Florida, and is "extremely sorry" that she did not handle matters in a more professional manner. She believes that her mental health problems contributed to her mishandling of Carrasquillo's funds and her failure to properly and timely respond to the inquiries from the bar. The respondent is presently not practicing law, and is currently in the process of applying to schools so that she can obtain a master's degree in mental health counseling and wellness. The respondent requests that this Court impose a one-year suspension, or alternatively, a suspension, if greater than one year, effective as of June 16, 2016, the date of her suspension in Florida, based on consideration of the following mitigating factors: the mental health issues she was suffering from and is being treated for, the lack of client harm inasmuch as her client has been fully reimbursed, the lack of venality, the aberrational nature of her misconduct, her lack of a prior disciplinary history, and her genuine remorse.

Based on the foregoing, we find that the imposition of reciprocal discipline is warranted based on the findings of the Supreme Court of Florida, and the respondent is suspended from the practice of law for three years, commencing June 16, 2016. Any future application for reinstatement is conditioned upon the respondent furnishing written proof from a mental health professional that she is mentally fit to resume the practice of law.

The respondent's motion to vacate the order to show cause dated January 20, 2017, is denied as unnecessary.

ENG, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.

Ordered that pursuant to 22 NYCRR 1240.13, the respondent, Keirsten Klatch, is suspended from the practice of law for three years, commencing June 16, 2016, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 14, 2018. In such ap-

plication (*see* 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension she (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (a), and (4) otherwise properly conducted herself; and it is further,

Ordered that during the period of suspension and until further order of the Court, the respondent, Keirsten Klatch, shall comply with the rules governing the conduct of disbarred or suspended attorneys (*see* 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Keirsten Klatch, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Keirsten Klatch, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15 (f); and it is further,

Ordered that any future application for reinstatement is conditioned upon the respondent furnishing written proof from a mental health professional that she is mentally fit to resume the practice of law; and it is further,

Ordered that the respondent's motion to vacate the order to show cause dated January 20, 2017, is denied as unnecessary.